Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| VIDES BAUTISTA BURGOS Y OTROS<br><br>Recurridos<br><br>v.<br><br>GC COMPANY CORP. Y OTROS<br><br>Peticionarios | KLCE202301179 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil Núm.: GB2019CV01056 consolidado con GB2019CV01079<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, el Juez Pérez Ocasio y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de febrero de 2024.

Comparece la parte peticionaria de epígrafe y solicita nuestra intervención para revocar la *Resolución* emitida el 3 de octubre de 2023, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). En el referido dictamen, luego de evaluar una solicitud de sentencia sumaria por insuficiencia de la prueba, interpuesta por los comparecientes, así como la oposición de la parte recurrida y una réplica, el TPI denegó resolver el pleito por la vía sumaria, al entender que existían controversias de hechos medulares.

Anticipamos la expedición del auto de *certiorari* peticionado y su revocación. Veamos el tracto procesal relevante.

**I.**

La parte recurrida, conformada por el señor Vides Bautista Burgos (GB2019CV01056),[2] así como por los esposos Aida Burgos

---

[1] El Hon. José I. Campos Pérez sustituyó a la Hon. Grace M. Grana Martínez, por virtud de la Orden Administrativa TA-2023-212, emitida el 6 de diciembre de 2023.
[2] Apéndice de la parte peticionaria, págs. 17-19.

Número Identificador
SEN2024 _____

Nevárez y Julio Pérez Collado (GB2019CV01079),[3] el 20 y 22 de agosto de 2019, respectivamente, presentó sendas reclamaciones civiles por un accidente de tránsito. Oportunamente, los pleitos fueron consolidados.[4] El señor Bautista Burgos instó, además, *Primera Demanda Enmendada*[5] contra el conductor del vehículo, el señor Josué Guihurt Santiago, GC Company Corp., titular del vehículo, y la aseguradora, Universal Insurance Company, y otros demandados con nombres desconocidos.

En esencia, la parte recurrida expuso que el que el 23 de agosto de 2018 ocurrió un accidente en la intersección entre las carreteras 199 y 169, jurisdicción de Guaynabo. En específico, el señor Bautista Burgos cruzaba como peatón la carretera 199 en dirección de Sur a Norte; mientras el señor Guihurt Santiago transitaba en el vehículo Mercedes Benz por la carretera 199 en dirección de Oeste a Este. Indicó que el conductor impactó al señor Bautista Burgos. Como resultado del atropello, el recurrido sufrió heridas de gravedad, fractura en la nariz y en el brazo derecho, fisura en la pelvis, en el coxis, pubis y en las costillas. Además, sufrió una fractura en el lado frontal de la cabeza, lo que provocó una hemorragia interna y permaneció en estado de coma. La parte recurrida alegó que la causa de los daños morales y pecuniarios se debió exclusivamente a la negligencia de la parte peticionaria. A tales efectos, le imputó responsabilidad solidaria y reclamó el resarcimiento de los daños físicos, sufrimientos y angustias mentales, el lucro cesante y la pérdida de ingresos, así como los gastos médicos pasados, presentes y futuros.

---

[3] Apéndice de la parte peticionaria, págs. 175-177.
[4] Apéndice de la parte peticionaria, págs. 24-25; 26.
[5] Apéndice de la parte peticionaria, págs. 20-23.

La parte peticionaria presentó *Contestación a Demanda* el 6 de febrero de 2020.[6] Aceptó la ocurrencia del accidente y añadió que ocurrió entre las 9:30 y 10:00 de la noche. Además, indicó que el señor Bautista Burgos vestía ropa oscura y cruzó la vía con luz roja. Aseveró que, con la luz verde a su favor, tocó bocina, aplicó el freno y giró a la izquierda para evadir al señor Bautista Burgos, pero aun así impactó al recurrido con el foco frontal derecho del vehículo. Así, pues, negó toda responsabilidad e imputó negligencia al recurrido, la asunción de riesgo y no haber mitigado daños, entre otras defensas afirmativas. Afirmó que el mero hecho de que acontezca un accidente no da lugar a inferir la negligencia.

El 1 de diciembre de 2021, los litigantes presentaron en conjunto el *Informe sobre conferencia con antelación al juicio.*[7] En el documento estipularon varios hechos esenciales,[8] el Informe de

---

[6] Apéndice de la parte peticionaria, págs. 32-36; véase, además, págs. 27-31 (16 de enero de 2020).

[7] Apéndice de la parte peticionaria, págs. 37-65.

[8] Las estipulaciones de los hechos son:

1. El día 23 de agosto de 2018 ocurrió un accidente en la Carretera 199 intersección con la Carretera 169 jurisdicción de Guaynabo.

2. El demandante el Sr. Vides Bautista Burgos cruzaba por la Carretera 199 en dirección de Sur a Norte como peatón con la luz roja en su contra.

3. El demandado Sr. José Guihurt Santiago transitaba en el vehículo Mercede[s] Benz del año 2016 tablilla IRX-470 por la carretera 199 en dirección de Oeste a Este, con la luz verde a su favor.

4. El vehículo Mercede[s] Benz del año 2016 tablilla IRX-470 es propiedad del codemandado GC Company Corp.

5. El codemandado Sr. Josué Guihurt Santiago impactó al demandante el Sr. Vides Bautista Burgos con la parte frontal del vehículo Mercede[s] Benz del año 2016 tablilla IRX-470.

6. El Sr. Bautista Burgos sostuvo múltiples lesiones corporales.

7. Al momento del accidente, Universal Insurance Company, tenía expedida una póliza de responsabilidad pública a favor de GC Company Coporation &/or Orlando Guihurt Díaz &/or Advance Sales, Inc. &/or Advance Source, Inc. sujeta a las cláusulas, condiciones, límites, exclusiones y restricciones de la misma.

8. Para el día del accidente, 23 de agosto de 2018, el Sr. Josué Guihurt Santiago, conducía con su licencia de conducir vigente.

9. El accidente objeto de esta demanda fue investigado por el Agente Jonathan D[í]az Sevilla, Placa #33534, quien preparó el Informe de Accidente #2018-7-199-4621

10. La autenticidad de los récords médicos de la demandante. En cuanto a los records [*sic*] médicos, siempre y cuando sean copia certificada la parte codemandada no tiene reparos a su autenticidad y que el Tribunal le imparta el valor probatorio que entienda pertinente.

11. La capacidad jurídica de las partes.

Accidente #2018-7-199-4621 preparado por el agente Jonathan Diaz Sevilla y la autenticidad de expedientes médicos certificados.

Así las cosas, culminado el procedimiento de descubrimiento de prueba, la parte peticionaria instó *Moción solicitando sentencia sumaria.*[9] Alegó que la causa de acción no procedía ante la ausencia de responsabilidad de la parte peticionaria e insuficiencia de la prueba de la parte recurrida. Planteó que los recurridos no contaban con prueba pericial para reconstruir el accidente, el señor Bautista Burgos no recordaba los hechos y la madre y el padrastro del perjudicado no presenciaron el accidente. Indicó que la única prueba es el Informe de Accidente, del cual aseveró que no se desprendía conducta negligente por parte del señor Guihurt Santiago. Añadió el hecho que el peticionario arrojó 0.00% en la prueba del alcohol en la sangre; mientras que la muestra del señor Bautista Burgos resultó en .18%. El recurrido, además, dio positivo a benzodiazepina. Por consiguiente, el señor Guihurt Santiago adujo que la alegación de negligencia se reducía a una "descarnada, vacía, especulativa, carente de una base racional",[10] por lo que la celebración de un juicio en su fondo resultaba en un ejercicio fútil.

La parte recurrida incoó *Moción en oposición a moción de sentencia sumaria.*[11] En esencia, sostuvo que, aun aceptando el volumen de alcohol en la sangre y la benzodiazepina, ello no eximía

---

[9] Apéndice del recurso, págs. 66-78, con anejos a las págs. 79-91: (1) Informe de accidente de tránsito; (2) Declaración jurada del señor Guihurt Santiago fechada el 8 de agosto de 2019; (3) Contestación a primer interrogatorio del señor Bautista Burgos; (4) Deposición al señor Bautista Burgos, pág. 8; (5) Deposición a la señora Burgos Nevárez, págs. 11, 16-17 y 27; (6) Informe de análisis toxicológico del señor Bautista Burgos que arroja .18 en prueba de alcohol; (7) Expediente médico del señor Bautista Burgos, pág. 647 que muestra positivo a benzodiazepina; (8) Deposición al señor Pérez Collado, pág. 31; (9) Requerimiento de admisiones de los peticionarios y contestación de los recurridos.

[10] Véase, de la parte peticionaria, pág. 76.

[11] Apéndice de la parte peticionaria, págs. 111-122, con anejos a las págs. 123-135: (1) Informe de accidente de tránsito; (2) Declaración jurada del señor Guihurt Santiago fechada el 8 de agosto de 2019; (3-6) Deposición al señor Guihurt Santiago el 16 de noviembre de 2021, págs. 35-37, 53; (7) Contestación a primer interrogatorio de los recurridos a los peticionarios; (8) *Evaluación médica independiente* del señor Bautista Burgos fechada el 19 de abril de 2021.

al señor Guihurt Santiago de su deber de responsabilidad como conductor, quien tenía la obligación de ejercer un alto grado de cuidado, aun cuando haya tenido el derecho al paso y el peatón estuviere haciendo uso incorrecto o ilegal de la vía pública. Apuntó que ese deber de cuidado era más importante cuando el conductor se aproximaba a una intersección. Acerca de la falta de recuerdo de los hechos del señor Bautista Burgos y la ausencia de conocimiento personal de los otros recurridos, la parte recurrida se limitó a plantear si, entonces, el conductor estaría eximido de responsabilidad en caso de que el peatón hubiera fallecido. A tales efectos, requirió que la determinación de negligencia la tomara el TPI en un juicio en su fondo. Asimismo, enfatizó las presuntas discrepancias entre el Informe de Accidente realizado por el agente Díaz Sevilla[12] y las expresiones que el señor Guihurt Santiago vertió un año después de los hechos en la declaración jurada de 8 de agosto de 2019.[13] A modo de ejemplo, la parte recurrida mencionó que en el Informe de Accidente se indicó que el peatón se encontraba en medio de la vía de rodaje y en la declaración el peticionario afirmó que el peatón comenzaba a cruzar la calle. Advirtió que el documento oficial tampoco recogía las maniobras de freno, bocina y giro a la izquierda que, en la declaración jurada, el señor Guihurt Santiago aseguró haber realizado para evadir al señor Bautista Burgos. Enunció que el Informe de Accidente no consignaba la observación de marcas de freno en el pavimento.[14] Tampoco se desprende del documento de la Policía el alegado hecho de que el señor Bautista Burgos corrió en dirección al vehículo cuando el peticionario tocó la bocina. En fin, la parte recurrida cuestionó que, a un año de los hechos, el peticionario recordara detalles que no se plasmaron en el

---

[12] Apéndice de la parte peticionaria, pág. 125.
[13] Apéndice de la parte peticionaria, págs. 92-93.
[14] Cabe mencionar que el Informe de Accidente indica que personal especializado tomó medidas y fotografías en la escena.

Informe aludido. Apuntaló que el señor Guihurt Santiago, el 17 de diciembre de 2020, al contestar el interrogatorio, aseveró que había explicado "todo lo sucedido" al agente Díaz Sevilla.[15] No obstante, la parte recurrida señaló que en la deposición tomada el 16 de noviembre de 2021, el peticionario testimonió: "Pero sinceramente no recuerdo, yo nada más recuerdo haberle relatado lo que pasó por encima a la policía, pero darle un, una, una descripción detallada de lo que pasó, como lo que está, como la declaración jurada, yo no recuerdo haber hablado con nadie sobre eso".[16] Consiguientemente, la parte recurrida sostuvo que el mecanismo de sentencia sumaria no era apropiado para resolver las controversias del caso sobre la negligencia del señor Guihurt Santiago y su credibilidad.

La parte peticionaria replicó,[17] a los fines de establecer que los recurridos incumplieron las formalidades del mecanismo de sentencia sumaria al no controvertir los hechos enumerados por el promovente. Solicitó al TPI que descartara de plano la *Oposición*. Insistió en que la parte recurrida no contaba con prueba suficiente para satisfacer el peso de la evidencia que le correspondía demostrar, a base de la preponderancia de la prueba.

El 4 de octubre de 2023, el TPI notificó la *Resolución* recurrida.[18] En observancia con la Regla 36 de Procedimiento Civil, *infra*, desglosó los hechos probados, a los que hemos impartido énfasis:

> 1. El 23 de agosto de 2018 ocurrió un accidente en la carretera #199 en la intersección con la carretera #169, en el municipio de Guaynabo.
>
> 2. El codemandante, Vides Bautista Burgos, cruzaba por la carretera #199, en dirección de Sur a Norte como peatón con la luz roja en su contra.
>
> 3. El codemandado, Josué Guihurt Santiago, transitaba en el vehículo Mercedes Benz del año 2016, tablilla IRX-

---

[15] Apéndice de la parte peticionaria, pág. 145, acápite 11.

[16] Apéndice de la parte peticionaria, pág. 142 líneas 5-9.

[17] Apéndice de la parte peticionaria, págs. 166-174.

[18] Apéndice de la parte peticionaria, págs. 1-15; 16.

470, por la Carretera 199, en dirección de Oeste a Este, con la luz verde a su favor.

4. El vehículo Mercedes Benz del año 2016, tablilla IRX-470, es propiedad de la parte codemandada, GC Company Corp.

5. **Según el Informe de la Policía**, el codemandado, Josué Guihurt Santiago, **no pudo evadir al codemandante y lo impactó** con la parte frontal del vehículo Mercedes Benz del año 2016 tablilla IRX-470.13 6.

6. Para el día del accidente, 23 de agosto de 2018, el codemandado, Josué Guihurt Santiago, **conducía con su licencia de conducir vigente**.

7. El accidente objeto de esta demanda fue investigado por el agente Jonathan Díaz Sevilla, con número de placa 33536, quien preparó el Informe de Accidente número 2018-7-199-4621.

8. Según el Informe de la Policía, se le realizó una prueba de alcohol por aliento al codemandado, **Josué Guihurt Santiago**, y esta mostró que el codemandado **tenía un 0.00% de alcohol en su organismo**.

9. En la Declaración Jurada hecha ante el fiscal Fleming Castillo Alfaro, el 8 de agosto de 2019, el codemandado, Josué Guihurt Santiago, indicó lo siguiente:

> ...Cuando veo al peatón, éste iba por el primer carril a mi derecha y **le toco bocina al peatón, apliqué el freno y giré hacia la izquierda, hacia el lado contrario de donde venía el peatón, pero como había un vehículo detenido en el SOLO, no me pude echar más a mi izquierda**. El peatón, después que escucha la bocina, lo que hizo fue que comenzó a correr hacia el carril donde yo estaba virando, en vez de detenerse o correr hacia donde él venía, hacia atrás...

10. Como resultado del accidente, el codemandante resultó con heridas de gravedad.

11. Según el informe de la policía, el codemandante fue atendido en el lugar por Manejo de Emergencias y Rescate del Municipio de Guaynabo y luego fue transportado al Centro Médico de Puerto Rico.

12. El 24 de agosto de 2018, a la 1:10 am, se le realizó una prueba de sangre al codemandante, **Vides Bautista Burgos, para detectar alcohol en su organismo y la misma arrojó 0.18% por volumen de sangre**.

13. Del récord médico de la Administración de Servicios Médicos surge que el codemandante, **Vides Bautista Burgos, arrojó positivo a *benzodia[z]epine[s]* el día del accidente**.

14. El 19 de abril de 2021, el Dr. Carlos Grovas Badrena realizó una Evaluación Médica Independiente en donde determinó que el codemandante tiene un impedimento de 48% de sus funciones fisiológicas generales.

15. El codemandante, **Vides Bautista Burgos, no recuerda cómo ocurrió el accidente**.

16. Los codemandados, **Aida Burgos y Julio Pérez no estuvieron presentes al momento del accidente**.

El TPI halló cuatro controversias que justipreció impedían dictar sumariamente la sentencia; a saber:

1. La negligencia y/o culpa de la parte codemandante.

2. La negligencia y/o culpa del codemandado, Josué Guihurt Santiago.

3. La valorización de los daños alegados.

4. La distribución de responsabilidad en cuanto a los daños alegados.

Al tenor de lo anterior, ordenó la continuación de los procedimientos. Ante su inconformidad, la parte peticionaria presentó oportunamente el auto de *certiorari* del epígrafe y señaló la comisión de los siguientes errores:

**PRIMER ERROR:** ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL DETERMINAR QUE EXISTEN HECHOS EN CONTROVERSIA QUE LE IMPIDEN DICTAR SENTENCIA SUMARIA POR INSUFICIENCIA DE PRUEBA PARA PROBAR LOS ELEMENTOS ESENCIALES DE LA CAUSA DE ACCIÓN DE DAÑOS.

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE "EN EL PRESENTE CASO NO SE HA PRESENTADO EVIDENCIA SUFICIENTE PARA DETERMINAR QUE EL SR. JOSUÉ GUIHURT SANTIAGO HAYA CUMPLIDO CON EL DEBIDO CUIDADO IMPUESTO POR LEY PARA SER RELEVADO DE FORMA ABSOLUTA DE RESPONSABILIDAD POR LOS DAÑOS ALEGADOS". CON ESTO, EL TRIBUNAL IGNORÓ QUE ES A LA PARTE DEMANDANTE A QUIEN LE CORRESPONDE PROBAR LA NEGLIGENCIA ALEGADA.

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL TOMAR EN CONSIDERACIÓN LA OPOSICIÓN PRESENTADA POR LA PARTE DEMANDANTE LA CUAL INCUMPLE CRASAMENTE CON LOS REQUISITOS DE LA REGLA 36.3(B) DE PROCEDIMIENTO CIVIL REFERENTES A LOS REQUISITOS DE FORMA PARA IMPUGNAR LOS HECHOS MATERIALES QUE NO ESTÁN EN CONTROVERSIA SEGÚN FORMULADOS POR EL PROPONENTE DE LA MOCIÓN DE SENTENCIA SUMARIA Y LO RESUELTO EN *SLG ZAPATA-RIVERA V. J.F. MONTALVO,* 189 DPR 414 (2013).

La parte recurrida compareció el 21 de noviembre de 2023. Con el beneficio de ambas posturas, podemos resolver.

**II.**

**El auto de *certiorari***

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). A diferencia de la apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró, supra.* El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, que cita a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Por ende, la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera..." *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró, supra*, págs. 334-335.

No obstante, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra*, pág. 335; *Pueblo v. Ortega Santiago, supra.*

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las cuales este foro

intermedio tiene autoridad para atender los recursos de *certiorari*.

En su parte pertinente, la norma dispone como sigue:

.    .    .    .    .    .    .    .

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra** de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria **de una moción de carácter dispositivo**. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro).

.    .    .    .    .    .    .    .

La regla procesal fija taxativamente los asuntos aptos para la revisión interlocutoria mediante el recurso de *certiorari*, así como aquellas materias que, por excepción, ameritan nuestra intervención adelantada, ya fuese por su naturaleza o por el efecto producido a las partes. *800 Ponce de León v. AIG*, *supra*, pág. 175.

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari*, nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de certiorari*, 4 LPRA Ap. XXII-B, R. 40. Así reza:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) **Si la situación de hechos planteada es la más indicada para el análisis del problema**.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) **Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración**.

(F) **Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio**.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

Claro está, es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018), que cita con aprobación a *Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000); *Meléndez Vega v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

### *La sentencia sumaria*

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, gobierna el mecanismo de la sentencia dictada sumariamente. Esta herramienta procesal sirve al propósito de aligerar la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, siempre y cuando no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho. Véase, *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas,*

193 DPR 100, 109 (2015). Así se propende a la solución justa, rápida y económica de los litigios de naturaleza civil en los cuales no exista una controversia genuina de hechos materiales. *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2021). En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 110. Por ello, "**[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario**". (Énfasis nuestro). *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

La Regla 36.2 del mismo ordenamiento procesal, establece que la parte contra la cual se haya formulado una reclamación podrá presentar "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación". 32 LPRA Ap. V, R. 36.2. Por su lado, conforme la Regla 36.3 de Procedimiento Civil, *supra*, en su contestación, la parte promovida "**no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente**. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede". (Énfasis nuestro). 32 LPRA Ap. V, R. 36.3 (c). Asimismo, la Regla 36.3 de Procedimiento Civil, *supra*, establece unos requisitos de forma a ser cumplidos por la parte promovente y la parte promovida. 32 LPRA Ap. V, R. 36.3; Véase, *Pérez Vargas v. Office Depot*, *supra*, pág. 698. Por consiguiente, el incumplimiento del promovente de estas formalidades acarrea que el tribunal no esté obligado a considerar su pedimento. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 111**. En caso de que el promovido sea quien**

**incumple dichos requisitos "el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho"**. (Énfasis nuestro). *Id.*

En los casos en que se alegue **insuficiencia de la prueba**, luego de celebrado un **descubrimiento de prueba amplio y adecuado**, el promovente debe establecer que: "(1) el juicio en su fondo es innecesario; (2) el demandante **no cuenta con evidencia suficiente** para probar algún hecho esencial a su reclamación, y (3) como cuestión de derecho, **procede la desestimación de la reclamación**". (Énfasis nuestro). *Rodríguez Méndez et al. v. Laser Eye*, 195 DPR 769, 786 (2016); *Ramos Pérez v. Univisión*, 178 DPR 200, 217-218 (2010). El juzgador de los hechos y el derecho es "el único examinador que dirime si una parte cumple con su carga probatoria para establecer la causa de acción que invoca". *Rodríguez Méndez et al. v. Laser Eye*, *supra*, págs. 786-787. Una vez el promovido presenta una **oposición a la solicitud de sentencia sumaria debidamente fundamentada**, se podrá disponer del pleito si queda demostrado que **la prueba descubierta no satisface los elementos necesarios para establecer su causa de acción**. *Id.* "[N]o puede evadir la moción del promovente por el mero pretexto de que, a pesar de no contar con evidencia suficiente para probar un elemento indispensable para su reclamación, merece su 'día en corte' ". *Id.*

Claro está, la sentencia sumaria sólo debe dictarse en casos claros. Por tanto, cuando no existe una certeza prístina sobre todos los hechos materiales que motivaron el pleito, no procede que se dicte sentencia sumaria. *Pérez Vargas v. Office Depot*, *supra*, pág. 699 y los casos allí citados. Por ser éste un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso

de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000). Siendo esto así, sólo procede que se dicte la sentencia sumaria "cuando **surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable** y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". (Énfasis nuestro). *Meléndez González et al. v. M. Cuebas, supra,* págs. 109-110, que cita a *Const. José Carro v. Mun. Dorado,* 186 DPR 113 (2012). De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio. *Rivera et al. v. Superior Pkg., Inc. et al., supra,* pág. 133.

En cuanto a la revisión de un dictamen sumario o la denegación de la resolución abreviada, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, así como si el derecho se aplicó de forma correcta. Esto es, no estamos compelidos a adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo, supra,* págs. 334-335. El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo

pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una de *novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que **tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil**. *Id.* Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil y exponer concretamente cuáles hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde revisar *de novo* si el foro impugnado aplicó correctamente el derecho a los hechos incontrovertidos. *Id.*, pág. 119. Al dictar una sentencia sumaria, este tribunal deberá realizar un análisis dual que consiste en: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo*, *supra*, pág. 333. Una vez realizado este análisis el tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real

sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede. *Id.*, págs. 333-334.

### *La responsabilidad civil extracontractual*

El hoy derogado, pero vigente a los hechos, Artículo 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141,[19] disponía que todo aquél que por acción u omisión cause un daño a otro vendrá obligado a repararlo, si ha mediado culpa o negligencia. Para que proceda una causa de acción de responsabilidad civil extracontractual, es necesaria **la concurrencia de un daño real, el acto u omisión tiene que ser culposo o negligente y debe existir un nexo causal entre el daño y la acción u omisión**. *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010); *López v. Porrata Doria*, 169 DPR 135, 150 (2004). La relación causal entre el acto negligente y los daños producidos debe ser suficiente en Derecho. *López Delgado v. Cañizares*, 163 DPR 119 (2004). La teoría de la causalidad adecuada postula que no es causa adecuada toda condición sin la cual no se hubiese producido el resultado, sino aquella que ordinariamente lo produce según la experiencia general. Es decir, la causa es la condición que ordinariamente produce el daño, según la experiencia general. *López v. Porrata Doria, supra*, págs. 151-152.

### III.

En la presente causa, la parte peticionaria plantea que el TPI erró al no resolver el pleito a su favor por la vía de apremio, a base de la insuficiencia de la prueba. Aduce también que la parte recurrida incumplió crasamente con los requisitos formales que exige la Regla 36, *supra*. Por su parte, la parte recurrida sostiene que corresponde al TPI la adjudicación de la alegada negligencia del

---

[19] Véase, Artículo 1815 del Código Civil de 2020, 31 LPRA sec. 11720, el cual dispone, en parte, que "[l]a responsabilidad extracontractual, tanto en su extensión como su naturaleza, se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad. [...]".

conductor en una vista en su fondo, y no por la vía sumaria. Aduce, en particular, que las declaraciones previas del señor Guihurt Santiago pueden ser utilizadas como mecanismos de impugnación en el juicio en sus méritos. En esencia, contrasta la información vertida por el señor Guihurt Santiago en el Informe de Accidente el día de los hechos *vis a vis* la declaración jurada prestada un año después ante el Ministerio Público. Discutiremos en conjunto los errores señalados.

Como cuestión de umbral, nos compete revisar *de novo* la petición de sentencia sumaria por insuficiencia de la prueba y su oposición. Al evaluar las formalidades que establece la Regla 36 de Procedimiento Civil, estimamos que la parte peticionaria cumplió cabalmente con la exposición de hechos esenciales e incontrovertidos, correctamente enumerados. Además, anejó documentos en apoyo a las aseveraciones que propuso como incontrovertibles; a saber: las estipulaciones de las partes, la declaración jurada del señor Guihurt Santiago y fragmentos de las deposiciones tomadas a la parte recurrida. Por igual, la parte peticionaria expuso la insuficiencia de la prueba para demostrar la negligencia imputada, por lo que sostiene que se justifica el dictamen sumario desestimatorio.

En cuanto a la parte recurrida, observamos un evidente incumplimiento de las normas procesales. Ello así, porque no rebatió los hechos incontrovertidos propuestos, según esbozados por la parte peticionaria, ni incluyó evidencia capaz de refutar la prueba ofrecida por el promovente del dictamen sumario. La parte recurrida se limitó a plantear las presuntas contradicciones del señor Guihurt Santiago. Opinamos que, ante la falta de prueba y el incumplimiento con las formalidades reglamentarias y jurisprudenciales de los recurridos, el TPI no debió considerar su escrito y conceder el remedio solicitado por los peticionarios.

Como se conoce, la parte promovida por una sentencia sumaria sustentada con evidencia documental y al palio de la insuficiencia de la prueba no puede descansar en meras alegaciones, sino que debe responder de forma detallada y específica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013). De lo contrario, se expone a que, en observancia con la Regla 36.3 (c), *supra*, "se acoja la solicitud de sentencia sumaria y se resuelva en su contra" como cuestión de Derecho. *Ramos Pérez v. Univisión*, *supra*, pág. 215. En estas instancias, sólo procede continuar con el pleito si existe una controversia medular y legítima sobre un hecho material. Éste no es el caso ante nos.

Según reseñamos, el TPI consignó de manera escueta ciertas controversias del pleito que impedían su dictamen abreviado. Indicó que debía determinar la negligencia del señor Bautista Burgos y la del señor Guihurt Santiago, la distribución de responsabilidad entre éstos y la valorización de los daños. No obstante, la cuestión a resolver se suscribe a, si después de celebrado un procedimiento de descubrimiento de prueba adecuado y de presentarse el *Informe sobre conferencia con antelación al juicio*, debidamente aprobado por el TPI,[20] el señor Bautista Burgos, sobre quien descansa el peso de la prueba, anunció o no evidencia preponderante y suficiente en Derecho para demostrar todos los elementos de su causa de acción al palio del anterior Artículo 1802 del Código Civil. Respondemos en la negativa.

Ciertamente, el señor Bautista Burgos sufrió serios daños provocados por un accidente de tránsito, en que el señor Guihurt Santiago era el conductor del vehículo. Del expediente surge la propuesta de presentación de prueba testifical y pericial para

---

[20] El *Informe sobre conferencia con antelación al juicio* fue aprobado por el TPI el 8 de diciembre de 2021. Véase, expediente electrónico en el Sistema Unificado de Manejo y Administración de Casos, entrada 88.

evidenciar dichos daños.[21] Ahora, el daño aducido está divorciado del resto de los elementos que deben demostrarse en una causa de acción por responsabilidad civil extracontractual: culpa o negligencia y nexo causal. Estos elementos deben concurrir para poder prevalecer en un pleito de daños y perjuicios. Somos del criterio que, en este caso, no existe evidencia para demostrar por preponderancia de la prueba ni la imputada negligencia del señor Guihurt Santiago y, mucho menos, un nexo causal. Veamos.

El señor Bautista Burgos, quien estaba bajo la influencia del alcohol y benzodiazepina,[22] no recuerda los hechos del incidente desgraciado.[23] Los otros testigos, la señora Burgos Nevárez y el señor Pérez Collado, no tienen propio y personal conocimiento de los hechos, toda vez que no se encontraban en la escena del accidente.[24] Asimismo, del Informe de Accidente, fechado el 23 de agosto de 2018, no surge indicio alguno de negligencia por parte del señor Guihurt Santiago. Ni siquiera se sugiere que el peticionario conducía a una velocidad exagerada, pues como el propio recurrido reconoce, en el documento no se consigna el hecho de marcas de freno en el pavimento resultantes de velocidad excesiva. Citamos el referido Informe de Accidente:

> Surge de la investigación realizada que mientras el conductor del vehículo de motor #1 transitaba de Oeste a Este por el carril central en la carretera 199 jurisdicción del pueblo de Guaynabo, [é]ste **al llegar a la intersección con la carretera 169 con luz verde a su favor intenta eludir a un peatón el cual se encontraba en el medio de la vía de rodaje con luz roja en su contra, [é]ste no pudo eludirlo y lo impacta** con la parte frontal derecha de su vehículo al peatón el cual se encontraba cruzando la intersección de Sur a Norte. [...] [E]l agente Gara[y] #248 Municipal de Guaynabo le realizó la **prueba de alcohol por aliento al conductor del vehículo #1 arrojando**

---

[21] Véase, Apéndice de la parte peticionaria, págs. 59-60; 147-165.

[22] Apéndice de la parte peticionaria, págs. 102-103.

[23] Apéndice de la parte peticionaria, pág. 97 líneas 14-23.

[24] Apéndice de la parte peticionaria, págs. 98 líneas 11-15; 99 líneas 2-5; 104 líneas 9-12.

**.000% de alcohol en su organismo**. [...][25] (Énfasis nuestro).

Según expusimos, el 8 de agosto de 2019, el señor Guihurt Santiago prestó una declaración jurada en la que afirmó lo siguiente:

El 23 de agosto de 2018, entre **9:45 a 10:00 de la noche**[,] salía de mi residencia e iba transitando por la Avenida Las Cumbre, en dirección hacia Cupey en mi **guagua**, Mercedes Benz GLE 350, **color blanca**, tablilla TRX-470, año 2016. Al llegar a la Carretera 199, intersección Calle Carazo donde hay cuatro carriles incluyendo el carril del SOLO **yo iba transitando por el segundo carril de derecha a izquierda, en dirección a Cupey. En dicha intersección yo tenía la luz del semáforo a mi favor, verde. No había mucha iluminación** en la calle y no estaba mojada la carretera, En ese momento, **cuando me voy acercando al cruce, veo a un peatón con ropa oscura, que comienza a cruzar la calle de derecha a izquierda. Cuando veo al peatón, éste iba por el primer carril a mi derecha y le toco bocina al peatón, apliqué el freno y giré hacia la izquierda,** hacia el lado contrario de donde venía el peatón, **pero como había un vehículo detenido en el SOLO, no me pude echar más a mi izquierda. El peatón, después que escucha la bocina, lo que hizo fue que comenzó a correr hacia el carril donde yo estaba virando,** en vez [de] detenerse o correr hacia donde él venía, hacia atrás. **Veo que el peatón corrió hacia mi guagua y lo impacto con la parte del foco frontal derecho**, [...]. Todo sucedió en cuestión de segundos, 3,4 a 5 segundos.

[...] El agente Jonathan Díaz, placa 33536 de Patrullas de Carreteras Bayamón[,] me tomó los datos y **le expliqué todo lo sucedido**. El agente Díaz me explica que me tienen que llevar al cuartel para hacerme la prueba de alcohol y le indiqué que estaba bien, que no había consumido bebidas alcohólicas. Durante el tiempo que yo estuve hablando con la policía, se acerca el conductor del vehículo que estaba detenido en el SOLO y le dice a la policía que él lo vio todo, que yo traté de esquivarlo y pensó que yo lo iba a impactar su vehículo. La policía me esposó para llevarme al cuartel, indicándome que era parte del protocolo. **Me llevaron al cuartel de Guaynabo donde me hicieron la prueba de alcohol la cual dio 0.00 por ciento de alcohol en mí**. Luego la policía me lleva de regreso al lugar del accidente, donde me presentan al fiscal Fleming Castillo [Alfaro], el cual me indica que había entrevistado al testigo. [...][26] (Énfasis nuestro).

La postura del señor Bautista Burgos es que la controversia del caso es si "puede probar" su causa. Asevera que impugnaría el

---

[25] Apéndice de la parte peticionaria, pág. 81.
[26] Apéndice de la parte peticionaria, págs. 92-93.

testimonio del señor Guihurt Santiago a base de sus previas declaraciones, así como de las expresiones realizadas en deposiciones e interrogatorios. Insiste en que éste incurrió en inconsistencias porque en un interrogatorio aseveró que "explicó todo lo sucedido" al agente Díaz Sevilla,[27] aun cuando en el Informe de Accidente no se consignan los detalles incluidos en la declaración jurada. No nos persuade.

El señor Guihurt Santiago declaró al ser depuesto el 16 de noviembre de 2021[28] que la narración de los eventos al policía fue "por encima",[29] "más o menos";[30] y acotó:

> Pero de narrarle, mira, exactamente lo que pasó, pues no recuerdo eso. No recuerdo.
>
> .      .      .      .      .      .      .      .
>
> **El oficial, como digo, los detalles de cómo pasó el accidente nunca los dije durante esa noche**, que yo recuerde eso. **Al único que le pude haber dicho fue al fiscal**. Que yo recuerde, fue al fiscal.
>
> .      .      .      .      .      .      .
>
> Pero sinceramente no recuerdo, **yo nada más recuerdo haberle relatado lo que pasó por encima a la policía**, pero darle un, una, **una descripción detallada** de lo que pasó, como lo que está, como la declaración jurada, yo no recuerdo haber hablado con nadie sobre eso.[31] (Énfasis nuestro).

El día de los hechos también conversó sobre lo acontecido con el fiscal Castillo Alfaro "por encima".[32] Por tanto, es razonable colegir que, si no hay detalles en el Informe de Accidente se debe a que, a diferencia de la declaración jurada, el peticionario no los ofreció. De igual modo, en la deposición prestada como parte del procedimiento de descubrimiento de prueba, el señor Guihurt Santiago reiteró los detalles declarados al fiscal Castillo Alfaro bajo juramento; a saber: que todo ocurrió muy rápido, que tenía la luz verde a su favor; que frenó, giró a la izquierda, pero que el señor Bautista Burgos corrió

---

[27] Apéndice de la parte peticionaria, pág. 21.

[28] Apéndice de la parte recurrida, págs. 4-62.

[29] Apéndice de la parte recurrida, pág. 39 línea 5.

[30] Apéndice de la parte recurrida, pág. 39 líneas 8-9.

[31] Apéndice de la parte recurrida, págs. 39 líneas 9-10; 40 líneas 4-7; 56 líneas 3-9.

[32] Apéndice de la parte recurrida, pág. 40 líneas 10-15.

hacia ese lado;[33] que tocó la bocina y no lo pudo esquivar.[34] Al tenor, concluimos que no existen las alegadas inconsistencias, por lo que la parte recurrida sólo cuenta con prueba para demostrar los daños sufridos por el accidente, no así la negligencia que alega incurrió el señor Guihurt Santiago ni la causa adecuada. Huelga mencionar que el señor Bautista Burgos tampoco anunció evidencia pericial para la reconstrucción del accidente, de manera que el TPI pueda justipreciar si, en efecto, el señor Guihurt Santiago incurrió en la negligencia imputada. Recuérdese que, de conformidad con nuestro ordenamiento probatorio, corresponde a la parte demandante la carga de probar la negligencia y no basta con alegarla. Regla 110 (A)-(B) de las Reglas de Evidencia, 32 LPRA Ap. VI. Es decir, en un caso de daños y perjuicios, en el que se alegue haber sufrido daños como consecuencia de la negligencia de una persona, el peso de la prueba respecto a dicha negligencia le corresponde a la parte actora. *Colón y otros v. K-mart y otros*, 154 DPR 510, 521 (2001) y los casos allí citados. Ello así, porque "[e]n materia de responsabilidad civil extracontractual, **el hecho productor del daño nunca se presume**". (Énfasis nuestro). *Id.*

Luego del examen ponderado del expediente, concluimos sin ambages que concurren todos los elementos para la procedencia de una sentencia sumaria por insuficiencia de la prueba. Reiteramos que el señor Bautista Burgos no cuenta con evidencia suficiente para probar la alegada negligencia del señor Guihurt Santiago y mucho menos se puede determinar el porcentaje de alguna contribución al daño sufrido, por lo que la celebración de un juicio es innecesaria; y, como cuestión de derecho, procede la desestimación de la reclamación. Al respecto, nuestro más alto foro

---

[33] Apéndice de la parte recurrida, págs. 51 líneas 9-15; 52 líneas 18-22; 53 líneas 1-2 y 20-23.
[34] Apéndice de la parte recurrida, pág. 54 líneas 3-9.

ha expresado que "[e]s impermisible, de acuerdo con nuestro esquema procesal civil, que al analizar una moción de sentencia sumaria por insuficiencia de la prueba los tribunales aseveren lacónicamente que es inevitable verter la prueba en un juicio plenario cuando a todas luces la parte demandante no pudo establecer, como mínimo, los elementos de su causa de acción. Ir a juicio en esas circunstancias sería un ejercicio fútil". *Rodríguez Méndez et al. v. Laser Eye, supra*, págs. 790-791.

En suma, en este caso, luego de que las partes condujeran un adecuado procedimiento de descubrimiento de prueba, el TPI aprobara el *Informe sobre conferencia con antelación al juicio*, así como ante la clara ausencia de evidencia y el incumplimiento de la parte recurrida con el ordenamiento procesal que gobierna el mecanismo de sentencia sumaria, apreciamos que el TPI incidió al no declarar con lugar la petición sumaria por insuficiencia de la prueba presentada por la parte peticionaria. Consiguientemente, acogemos las determinaciones de hechos enunciadas por el TPI en el dictamen impugnado y decretamos la desestimación con perjuicio de la reclamación de la parte recurrida.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* y revocamos la *Resolución* impugnada. En consecuencia, se desestiman, con perjuicio, las causas de acción de los casos GB2019CV01056 y GB2019CV01079.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones